THOMAS MELLON v. H. CAMPBELL.

11 415
f196 105

1. The attorney or agent of a judgment-creditor into whose hands the land of a defendant has been delivered on a *liberari facias*, and who collects the rents, cannot charge the defendant a commission on the amount of rents collected. Since the act of 1840, all allowance to the plaintiff for trouble and expense is disallowed.

2. Where there have been no pre-existing mutual accounts or dealings between parties, a statement furnished by one to the other, and retained without objection, and a receipt given for a payment on account of the balance exhibited by the statement, is no evidence against the party receiving it and giving the receipt.

ERROR to the Common Pleas of Allegheny.

*Sept.* 7. This was an appeal from the judgment of a justice. Campbell was the plaintiff, Mellon the defendant below.

Small, a judgment-creditor of Campbell, levied upon and extended Campbell's real estate, which the sheriff delivered to him on a *liberari facias*. Mellon collected the rents for Small, as his attorney and agent, until, according to his statement, he had received $33.13 more than was due to Small. Of the moneys so received, he rendered an account to Campbell, charging various commissions on rents received by him, and exhibiting the above balance, for a part of which he gave Campbell an order, expressly on account of this balance. Mellon afterwards tendered to Campbell the residue, which he admitted to be due to him, which Campbell declined receiving, insisting that the charges for commission

and discount were not legal as against him. And, thereupon, he brought suit.

The court below charged that the defendant could not maintain his claim for commissions, and that the plaintiff was entitled to recover against him, in his individual capacity, the balance admitted, and also the amount of any charges for commissions. Verdict accordingly.

*Mellon*, for the plaintiff in error.—A known agent or attorney is not personally responsible, when acting within the scope of his authority: Story's Agency, § 261. Possession was delivered here to Mellon, as agent, under § 50 of the act of 1836: Dunlop, 728. § 51, 52, give restitution after satisfying debt, interest, costs, and *reasonable charges and expenses*. As agent, we are responsible for the surplus to Small, not to Campbell. There is no privity of contract between us and Campbell to support an action for money had and received: 1 S. N. P. 104. The receipt of the order on account shows that the charges for commission were by defendant's consent. But the law allows them without that consent. § 54, Act of 1836, allows the plaintiff, extending property, for his *reasonable expenses and labours*. The act of 1840 leaves it optional to pursue the course given by the act of 1836, and only takes away the form of the remedy.

*Austin*, contrà.—The sections of the act of 1836, relating to executions, which are relied on, are repealed; but the § 49, which is not repealed, allows only the collection of "the debt or damage, with lawful interest thereon." The repealed sections never allowed a charge for commissions for receiving the rents of the extended property. Commissions are never paid by defendants, save by express agreement.

The taking up the order for payment on account, after receiving Mellon's statement of the balance due to us, is no admission of the correctness of the statement.

The opinion of this court was delivered by

COULTER, J.—This action was instituted before a justice, and carried to the Common Pleas by appeal. The plaintiff declared for money had and received to his use, and defendant pleads *non assumpsit* and payment. There is no doubt or dispute about the plaintiff in error having received the money. He set up objections to the recovery, which may be called technical. Mellon was pro-

secuting a judgment for one Small, against Campbell, and the property of Campbell was delivered over to the plaintiff upon an extent. Mellon, as attorney for the plaintiff, rented and managed the property for a certain time, and made the amount of the plaintiff's judgment, with interest and costs, and about seventy-four dollars more. Part of this he paid to Campbell, and offered to pay him some more, which Campbell declined to receive, unless he would pay him the full amount over and above the debt, interest, and costs. Mellon resists, on the ground that he was agent of the plaintiff, and not accountable to the defendant, but to his principal, and because he was entitled to retain all except what he offered to pay, as commissions. He charges five, sometimes six, and sometimes seven per cent. I can perceive no good reason why the defendant below is not bound to pay. He has money in his hands which belongs to the plaintiff. Part of it he admits to be due, the residue he claims as commissions. But he was the attorney and agent of Small, who, of course, is bound to compensate him for his services; and he has no right to recover compensation for those services from the defendant. In England, one-half of the defendant's lands was delivered on the writ of *elegit* to the plaintiff, until the debt, interest, and costs were paid by the profits. Of course the plaintiff would be entitled to the expenses of tillage and necessary repairs; hence the defendant, when the plaintiff held over, was entitled to a writ *quod computandum;* and our statute of 1705 provides, that persons to whom lands shall be delivered by *liberari facias* shall hold in the same manner and method as those who hold under writs of *elegit,* in England. The act of 1836, in § 39, provides that the lands shall be delivered to the plaintiff, his heirs, &c., at the appraisement, until the debt and damages, with lawful interest thereon, be fully levied thereout. The sections 52 and 57, of the act of 1836, are expressly repealed by the act of 13th October, 1840. So that by the statutory enactments, as they now exist, when the defendants refuse to accept under the provisions of the law last mentioned, the plaintiff is thrown upon his remedy to take the lands at the appraisement, until the debt or damages, with lawful interest, shall be fully levied thereout. There seems to be no hardship in this, because it is the duty of the jury to fix the annual clear value beyond all reprises, which include expenses of repairs, taxes, costs, trouble, &c. In different counties they may have different modes of fixing the net annual rent for the payment of the debt and costs. But in all the counties where I was acquainted with the practice, they add seventeen per cent. interest to the liens,

and then add all the costs, fix the net annual rent beyond repairs and taxes, and payable at the commencement of the year, and if this will pay the debt and interest of all the liens, with the interest and costs, the land is extended, and either the defendant or plaintiff must take at that valuation. But as to the plaintiff being at any time, or under the provisions of any statute, entitled to charge five, six, seven, or nine per cent. commissions, for receiving the rent and putting it into his pocket, I never heard of it before. And if the plaintiff cannot lawfully do it himself, neither can his attorney or agent. The whole process is derived from the English statute of *elegit*, and by that statute the personal goods of defendant were delivered to the plaintiff upon a valuation, in satisfaction of the debt. And here the lands are delivered upon a *liberari facias*, at an assessed or appraised rent beyond all reprises in satisfaction of the debt. Under the old statute of 1705, and under §§ 52, 53, 54, and 55, of the act of 1836, if the plaintiff held over, the defendant might have been driven to the *scire facias ad computandum*, and perhaps may resort to that remedy yet. But since the act of 1840, all allowances for trouble and expense to the plaintiff are disallowed, and there is no necessity for the *scire facias*.

There is nothing in the objection arising out of Mellon having furnished an account of the rents received, in which commissions were charged, and Campbell afterwards receiving twenty-five dollars. This was no admission of the correctness of such charge. Between merchants dealing together, and merchants having mutual accounts, if an account stated is furnished by one to the other, which is retained for a length of time without objection, it is good evidence in action of account stated. But when there has been no pre-existing debt or dealing between the parties, such a statement as was here furnished, could be no evidence against the defendant. The plaintiff, as an honest man, could do nothing less than furnish such an account of the moneys he received. To make an account stated, there must be a demand on the one side, which is acceded to on the other; and it usually consists of an account of mutual transactions, drawn up by one party and exhibited to the other. But in this case there was no mutual dealing, no accounts between them, and, as Mellon alleges, no privity whatever.

Nor is the objection that Mellon as agent was accountable to his principal, who was accountable to Campbell, of any greater force. Small had no lawful right to receive anything but the debt, interest, and costs, which are allowed. All beyond that was the money of Campbell, and Small could not authorize his attorney to receive

that which he had no right to receive himself. The money belongs to Campbell; Mellon has it in his possession, and has no legal right to keep it.

Judgment affirmed.