## Delaware & Hudson Canal Company *v.* Von Storch.

*Reprises—Definition of.*

The word " reprises " means such deductions as are required to be made from gross income in order to ascertain the clear or net profit; not deductions for bad management or personal short comings of the holder of the land, or from fire or flood or similar casualty, but deductions for burdens incident to the land as such, certainly including taxes, charges and impositions of all kinds which attach to the land itself.

*Mines and mining—Coal lease—Reprises—Sewer assessment.*

Under a stipulation in a coal lease that the lessees shall pay to the lessor a stipulated rent, " clear of, and over and above all taxes and reprises," the lessees are bound to pay municipal assessments for the cost of a· sewer.

Argued Feb. 20, 1900.    Appeal, No. 199, Jan. T., 1899, by plaintiffs, from judgment of C. P. Lackawanna Co., Nov. T., 1896, No. 179, on verdict for defendant, in case of the President, Managers & Company of the Delaware & Hudson Canal Co. v. William Von Storch.    Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Assumpsit to recover the amount of a sewer assessment.    Before ARCHBALD, P. J.

The facts sufficiently appear by the opinion of the Supreme Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant.    Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*W. H. Jessup*, with him *W. H. Jessup, Jr.*, for appellants. — A sewer is a permanent improvement to the land, and the burden of its construction is properly charged to the owners of the land: Schoonmaker v. Hoyt, 148 N. Y. 425; 2 Wharton on Contracts, sec. 657.

In construing a written contract the words used will be taken in the ordinary and popular sense : Stearns v. Sweet, 78 Ill. 446 ; Hawes v. Smith, 12 Me. 429; Mansfield, etc., R. R. Co. v. Veeder, 17 Ohio, 385.

The word "reprises" means something that is a yearly deduction from the rents and not something which is sporadic and may never be chargeable against the land: Pettibone v. Smith, 150 Pa. 118; Robinson v. County of Allegheny, 7 Pa. 161; Act of June 16, 1836, P. L. 769, sec. 48; Mellon v. Campbell, 11 Pa. 415; Near v. Watts, 8 Watts, 319; Springer v. Walters, 34 Pa. 328; Pulaski v. King, 1 Yeates, 477; Naples v. Minier, 3 Penrose & Watts, 475.

*Henry A. Knapp,* of *Willard, Warren & Knapp,* with him *Charles H. Von Storch,* for appellee.—The intention of the parties to this lease clearly was to provide that the lessee should bear every charge which should be imposed upon the land during the continuance of the lease : Philadelphia v. River Front R. R. Co., 133 Pa. 134; Schuylkill Nav. Co. v. Moore, 2 Wharton, 477; Saltsburg Gas Co. v. Saltsburg Boro., 138 Pa. 250; Todd v. Wheeler, 173 Pa. 117.

The word "reprises" sufficiently covers the municipal assessments involved in this case: Near v. Watts, 8 Watts, 319; Howell v. Woolfort, 2 Dall. 75; Pulaski v. King, 1 Yeates, 477; Burd v. Lessee of Dansdale, 2 Binn. 79; Naples v. Minier, 3 P. & W. 475; Mellon v. Campbell, 11 Pa. 415; Springer v. Walters, 34 Pa. 328; Act of June 11, 1879, P. L. 122; Act of May 10, 1881, P. L. 13.

OPINION BY MR. JUSTICE MITCHELL, May 21, 1900 :

Plaintiffs are assignees of a lease to Brooks et al. by defendant of coal land, including part of the surface. The city of Scranton in which lay the part of the land which gives rise to this controversy assessed it for the cost of a sewer, and the lessee company to avoid sale of the land, paid the assessment and now sues to recover it as a charge properly payable by the lessor.

The lease which was made in 1881 provided that the lessees should pay to the lessor a stipulated rent "clear of, and over and above all taxes and reprises which may be during said term imposed or assessed upon coal mined or unmined in or upon the hereby demised premises, and upon the surface of the lands hereby demised, . . . . and also pay and bear all such imposts, taxes and reprises."

In Pettibone v. Smith, 150 Pa. 118, under a similar but by no means identical contract it was held that an assessment for a sewer and for street grading was not within a covenant to pay all "taxes, duties and imposts." The stress of the present contention is therefore frankly put by both parties on the word "reprises."

Reprises is not a word in common use, even in the law. So comprehensive a work as the American and English Encyclopedia of Law omits it altogether. The dictionaries give it as a law term, with the following definitions:

"Deductions and duties paid yearly out of a manor and lands, as rent charge, rent seck, pensions, annuities and the like:" Webster.

"Yearly deductions, duties or payments out of a manor and lands, as rent charge, rent seck, annuities and the like:" Century Dictionary.

"Deductions and payments (as for annuities) out of lands, as a manor's yearly value over and above reprises:" Standard Dictionary.

"Deductions or payments out of the value of lands, as rent-charges, annuities," etc.   Worcester.

"Deductions and duties which are yearly paid out of a manor and lands, as rent charge, rent seck, pensions, corrodies, annuities, etc., so that when the clear yearly value of a manor is spoken of, it is said to be so much per annum ultra reprises, besides all reprises:" Burrill's Law Dictionary, citing Cowell.

"A resumption or taking back, used for such deductions as rent charges or annuities:" Jacob's Law Dictionary.

"The deductions and payments out of lands, annuities and the like, are called reprises because they are taken back. When we speak of the clear yearly value of an estate we say it is worth so much a year, ultra all reprises:" Bouvier.

"Deductions on account of payments and expenses:" Anderson's Law Dictionary.

Appellants rely strongly on the phrase "a yearly deduction" and argue that the term cannot include something that is sporadic and may never be chargeable against the land. But it does not appear that the yearly feature is of the essence of the definition. Only two of the four lexicographers quoted, use the word yearly or annual in this connection except in giving

examples for illustration, and it is notably absent from three of the four law dictionaries.

But in addition to the general use of the word, we have a very important and persuasive legislative and judicial construction of it. As a legal if not a popular term it has survived longer in Pennsylvania, than it appears to have done elsewhere. In the act of January 12, 1705–6 " for taking lands in execution for payment of debts " (2 Stat. at Large [ed. 1896], p. 244), it is provided that upon recovery of judgment and award of execution to be levied upon lands, etc., it shall not be lawful for the sheriff to sell any such lands, etc., " which shall or may yield yearly rents or profits beyond all reprises sufficient within the space of seven years to pay or satisfy such debt or damages," but such lands shall be delivered to the execution creditor until the debt be levied by a reasonable extent, as upon writs of elegit in England, provided " that if the clear profits of such lands shall not be found by inquest of twelve men to be sufficient within seven years," etc., then the sheriff shall so certify and a writ of venditioni exponas shall issue. The context of the word " reprises " here, and its use in connection with " clear profits " make its meaning plain. It means such deductions as are required to be made from gross income in order to ascertain the clear or net profit. Not deductions for bad management, or personal shortcomings of the holder of the land, or from fire or flood or similar casualty, but deductions for burdens incident to the land as such, certainly including taxes, charges and impositions of all kinds which attach to the land itself. And such has been the judicial understanding of the word. Thus in Mellon v. Campbell, 11 Pa. 415, it is said by COULTER, J., " It is the duty of the jury to fix the annual clear value beyond all reprises which include expenses of repairs, taxes, costs, trouble," etc. So in Near v. Watts, 8 Watts, 319, KENNEDY, J., says, " The inquest was to ascertain the clear yearly value of the estate after defraying all expenses and charges usually incident to and necessary for the enjoyment thereof," and again in the same case, drawing the distinction between an extent upon a life estate and upon a fee simple, he says in regard to the latter, the inquest should " take into consideration all the liens existing against the estate, that are or shall become payable within the seven years, as composing in this particular instance a portion

of what has been considered reprises; because unless the aggregate of the rents, issues and profits beyond the amount of all such liens including also what shall be deemed necessary to meet repairs and discharge all public assessments thereon, will pay," etc., the inquest return that it is insufficient.

The act of 1705 remained on the statute books until it was substantially re-enacted by the existing act of June 16, 1836, and the legislative and judicial use of the word "reprises" has thus continued in the same sense for nearly 200 years.

From these definitions and history of the word it is clear that in the essence of their meaning reprises are any deductions necessary to be made from a gross fund in order to show a net result or in the language of the statutes, "a clear profit." And the lease as well as the circumstances under which it was made show that this was the sense in which the parties intended the word to be understood. The lessors were about to part with their coal, and with the possession and use of the surface of the land, for an indefinite but probably long continued term. During this term the lessees were practically to own and control the land, to take its profit, and on the other hand to bear its burdens, while the lessors as compensation for their practical relinquishment of the advantages of their ownership were to receive a rent which should be to them a clear profit. Therefore they used a technical word, but one as general and comprehensive as could readily be found, and provided that the rent should be paid in cash, "clear of and over and above all taxes and reprises." While an assessment for sewer purposes was probably not in direct contemplation of the parties yet it belongs to the class of deductions or reprises from which the rent due the lessors was to be free.

Judgment affirmed.