**Citibank v. Hull.**

*Neil Sarker*, for plaintiff.
*Gail Hills*, for defendant.

MILLER, *J.*, August 23, 2012—Plaintiff, Citibank, N.A., pleads facts which it hopes will support an "account stated" cause of action against Mr. Hull, as an alleged credit card debtor, plaintiff, a national banking association engaged in consumer lending, avers that defendant obtained

extensions of credit from plaintiff or its predecessor in interest by means of a credit card account. See plaintiff's complaint, filed April 9, 2012, at ¶¶3-4. Defendant has preliminarily objected, pursuant to rule 1028 of the Pennsylvania Rules of Civil Procedure on the bases that (1) the complaint does not state any date when defendant allegedly applied for or obtained such extension of credit, (2) that the nature of the agreement, i.e., whether the agreement encompassing the extension of credit was in writing is not made clear on the face of plaintiffs complaint and (3) that no writing is attached in possible violation of Rule 1019 of the Pennsylvania Rules of Civil Procedure as well as that (4) the complaint contains "no allegation as to when any payments were required to be due" or (5) "as to when defendant allegedly utilized the credit card account" and (6) that the complaint is insufficiently specific. See generally defendant's preliminary objections, filed May 17, 2012. To evaluate defendant's objections, we must consider both the facts pleaded by plaintiff in light of the cause of action plaintiff seeks to assert. When considering preliminary objections, all material facts set forth in the complaint and any exhibits attached thereto are admitted as true, as well as all reasonable inferences which may be drawn from those facts. *See Toney v. Chester County Hospital, 36 A.3d 83, 99-100 (Pa. 2011).*

Plaintiff avers in its complaint that "[a]ccurate records of all debits and credits to the account were maintained by plaintiff." See plaintiff's complaint at ¶6. Plaintiff also avers, "defendant was provided with monthly statements for the account including the billing statement attached hereto as Exhibit A [....] The monthly statements accurately

stated the previous balance and the debits and credits to the account for the prior billing period." See *id.* at ¶7. Plaintiff further avers, without providing any specific date or figure, that "defendant had for many months after receipt of a billing statement made payment on the account or retained the statement without payment." See *id* at ¶8.

Rule 1019(a) of the Pennsylvania Rules of Civil Procedure; requires that "[t]he material facts on which *a cause of action or defense* is based shall be stated in a concise and summary form." See Pa.R.C.P. 1019(a) (emphasis added). Rule 1019(f) requires that "[a]verments of time, place and items of special damage shall be specifically stated." See Pa.R.C.P. 1019(f). Rule 1019(h) requires that "[w]hen *any claim or defense* is based upon an agreement, the pleading shall state specifically if the agreement is oral or written." See Pa.R.C.P. 1019(h). Rule 1019(i) requires that "[w]hen any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof, but [subject to the caveat that] if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance in writing." See Pa.R.C.P. 1019(i) (emphasis added). Rule 1028(a) permits preliminary objections to be lodged because of the "failure of a pleading to conform to law or rule of court or inclusion of scandalous or impertinent matter[,]" or where there is "insufficient specificity in a pleading." See Pa.R.C.P. 1028(a)(2)-(3). Nothing in the plain language of these Rules suggests that they are restricted to actions for breach of contract.

First, with regard to fact pleading, plaintiff argues, and

is correct, that a complaint does not wed a plaintiff to a particular theory of liability in Pennsylvania, as ours is a fact-pleading Commonwealth. See, e.g., *Kuisis v. Baldwin-Lima-Hamilton Corp.*, 457 Pa. 321, 326, n.8, 319 A.2d 914, 918, n.8 (1974) ("The notion that a complaint weds a plaintiff to a particular theory of liability is foreign to Pennsylvania pleading. Ours is a system of fact pleading, not 'theory' pleading; a plaintiff is free to proceed on any theory of liability which the facts alleged in his complaint will support.") However, *Steiner v. Markel*, 600 Pa. 515, 968 A.2d 1253 (2009), a case which is surgically quoted here by plaintiff, dealt with whether the Superior Court could, on review, sua sponte reformulate the cause of action proceeded upon by a plaintiff at trial in order to apply a different statute of limitations.

In *Steiner*, plaintiffs-appellees had proceeded by describing their complaint as a claim for "professional malpractice" related to a real estate purchase for which the defendant-appellant, an attorney, had provided them legal services. The defendant-appellant erroneously described the property in the deed he prepared and the error was not discovered until after the closing. Defendant-appellant's attempts to correct, his error, through negotiation with the sellers of the real estate at issue, were unsuccessful and the plaintiffs-appellees were sued by the sellers. Plaintiffs-appellees attempted to join defendant-appellant via a joinder complaint, which did not contain a claim for breach of contract. Instead, the joinder complaint identified a claim for professional malpractice. The joinder complaint was ultimately dismissed because plaintiffs-appellees failed to file a certificate of merit as required by Rule 1042.3 of the

Pennsylvania Rules of Civil Procedure.

Plaintiffs-appellees subsequently commenced an action by writ of summons against defendant-appellant, and filed a complaint, which contained counts for professional malpractice, third party beneficiary, and breach of good faith and fair dealing. The complaint did not mention any claim for breach of contract. Defendant-appellant filed preliminary objections to the complaint and plaintiffs-appellees filed a petition to amend, in which they failed to seek leave to add a breach of contract claim to the complaint. Plaintiffs-appellees agreed to strike their breach of good faith and fair dealing count. Defendant-appellant filed an answer and new matter raising, as an affirmative defense, the statute of limitations of two years applicable to professional malpractice claims, cognized as torts, and filed a motion for judgment on the pleadings on this basis. The trial court dismissed the professional malpractice claim as barred by the statute of limitations. Plaintiffs-appellees filed a motion for reconsideration. In the motion for reconsideration, they argued that the two-year statute of limitations on their professional malpractice claim had been tolled by defendant-appellant's concealment of wrongdoing, thus delaying their discovery of their injury. Again, in the motion for reconsideration, plaintiffs-appellees made no mention of a breach of contract. The motion was denied by the trial court.

Plaintiffs-appellees then appealed to the Superior Court. In their Rule 1925(b) statement of matters complained upon, plaintiffs-appellees did not assert that their professional malpractice claim was or involved a breach of contract claim. Rather, they again raised the tolling

issue for the two-year statute of limitations. The Superior Court reversed the trial court and remanded, holding, sua sponte, that the complaint stated a timely claim for breach of contract, relying on the statement that plaintiffs-appellees had paid a fee to defendant-appellant's law firm for services allegedly rendered by defendant-appellant. The Superior Court affirmed the trial court's holding that the two-year torts statute of limitations had not been tolled. Defendant-appellant then appealed to the Supreme Court, arguing that the Superior Court should not have decided that the allegations contained by the complaint made out a breach of contract claim because plaintiffs-appellees never raised this argument, despite repeated opportunities to do so. Plaintiffs-appellees argued that, pursuant to the Pennsylvania Rules of Civil Procedure, a plaintiff does not have a duty to plead a specific legal theory in a complaint, apparently citing *Kuisis*, supra, and that the trial court is obligated to determine whether a complaint states a claim under any theory.

The Supreme Court noted that its jurisprudence has consistently held that an appellate court cannot reverse a trial court judgment on a basis that was not properly raised and preserved by the parties. That court then held that neither a trial court nor an appellate court has the duty to scour a plaintiff's complaint in order to discover all potential claims therein, stating:

As justification for searching the complaint to find a viable cause of action, the Superior Court relied upon Rules of Civil Procedure 1019 and 126. Rule 1019(a) provides that "the material facts on which a cause of action or defense is based shall be stated in a concise and

summary form." Pa.R.C.P. 1019(a). *We have construed this rule to mean that the complaint must not-only apprise the defendant of the claim being asserted, but it must also summarize the essential facts to support the claim.* See *Landau v. Western PA. Nat'l Bank,* 445 Pa. 217, 228, 282 A.2d 335, 341 (1971) (noting that the purpose of Rule 1019(a) is to require the plaintiff to disclose sufficient facts to enable the adverse party to prepare his case). Pursuant to Rule 126, the rules are to be liberally interpreted. Pa.R.C.P. 126.

Rules 1019(a) and 126 do not support the Superior Court's action. The clients here simply did not plead facts sufficient to apprise the attorneys that the clients intended to allege a cause of action grounded in contract. Although the clients generally argued that the complaint was valid and contained a timely claim, the clients never said, argued or wrote that their complaint contained a breach of contract claim. Instead, the clients asked the appellate courts to scour the complaint for any and all causes of action. Pennsylvania law does not support such an obligation, which would create a moving target for the courts and litigants. If the clients themselves do not know what their cause of action is, the attorneys cannot reasonably respond to it.

See *Steiner,* 600 Pa. at 526-27, 968 A.2d at 1259-60 (emphasis added).

Thus, while *Steiner* reaffirmed the concept of fact-pleading in Pennsylvania, it also recognized its limitations and the necessity that plaintiff know and be bound by its representation as to what cause of action it is proceeding

under. Courts do not exist to insure that a plaintiff has opted to proceed under a cause of action which will afford him relief; the necessary ordering of facts germane to any cause of action is, therefore, plaintiff's responsibility. *Steiner* also reiterated the longstanding requirement that a defendant must be provided with sufficient facts to prepare his defense. Plaintiff, in its answer to defendant's preliminary objections, specifically denied "that plaintiff set forth a cause of action or any allegations that are based upon an agreement. Plaintiff's cause of action is based upon an account stated." See plaintiff's answer to preliminary objections, filed June 6, 2012, at ¶4. We agree that plaintiffs complaint in the case sub judice is presently factually deficient to support a breach of contract cause of action.

Despite the fact that credit cards are typically cognized as contractual relationships, plaintiff apparently recognizes that an "account stated" action may be sustained upon the pleading of facts too anemic to support of a breach of contract cause of action *if* certain necessary prerequisite facts have, themselves, been pleaded in support of an "account stated"; namely — plaintiff is required to plead that the parties mutually assented to the correctness of an account. Our Supreme Court has remarked:

> The gist of an account stated consists in an *agreement to, or acquiescence in,* the correctness of the account, so that in proving the account stated, it is not necessary to show the nature of the original transaction, or indebtedness, *or to set forth the items entering into the account. Where the evidence tending to show the statement of account is not in dispute, the question as to*

*whether the transaction amounts to an account stated is for the determination of the court.*

See *David v. Veitscher Magnesitwerke Actien Gesellschaft,* *348 Pa. 335, 341-42, 35 A.2d 346,349 (1944)* (emphasis added); accord *South Side Trust Co. of Pittsburgh v. Washington Tin Plate Co., 252 Pa. 237,97 A. 450 (1916).*

As a result of defendant's implied assent, which plaintiff infers from defendant's alleged prolonged failure to object to the balance set forth on a single monthly statement related to the alleged credit card account, plaintiff claims defendant owes the sum of $7,829.54, "which sum reflects the Exhibit A statement balance less credits, if any, which were applied subsequent to the date of Exhibit A." See *id.* at ¶11. We note that "[a] 'statement of account in business dealings and an 'account stated' in law are not synonymous." See, e.g. *C-E Glass v. Ryan, 70 Pa. D.&C. 251, 253 (Pa.Cmn.Pls.1975).*

The pivotal question in determining whether plaintiff has adequately pleaded an "account stated" is whether plaintiff has supplied factual averments which support defendant's assent to the correctness of a computation of a liquidated debt, arising from the parties' history of dealings or mutual transactions and which has been provided to him.

This requires our review of two interrelated concepts: (1) whether plaintiff has provided a computation of a liquidated debt, which, if agreed to, would be sufficient to form the basis of an "account stated"; and (2) whether defendant's mere failure to respond, under the circumstances alleged, may constitute adequate assent to the correctness of the

account as stated under the circumstances of this case. A failure of either condition is fatal to plaintiff's complaint, thus requiring amendment to include supplementary facts and possibly the attachment of supplementary writings.

*Black's* defines "account stated" as "[a] balance that parties to a transaction or settlement agree on, either expressly or by implication. The phrase also refers to the agreement itself or to the assent giving rise to the agreement." See *Black's Law Dictionary* (9th ed. 2009). *Black's* also sets forth excerpts from other authorities on the nature of the "account stated" cause of action: "If a creditor and a debtor wish to compromise or liquidate a disputed or unliquidated debt, they may do so by either a substituted contract or an accord. If, however, their agreement is in the nature of a *computation*, it is called an account stated. An account stated, then, is a manifestation of assent by both parties to the stated sum as an accurate computation of the debt." E. Allan Farnsworth, contracts §4.24, at 286 (1982) (emphasis added). As set forth in *Black's*, the restatement (second) of contracts provides "[a]n account stated is a manifestation of assent by debtor and creditor to a stated sum as an accurate *computation* of an amount due the creditor." Restatement (second) of contracts §282(1)(1979) (emphasis added). Upon independent review of the restatement, however, the rule is more fully developed as follows:

(1) An account stated is a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due the creditor. A party's retention without objection for an unreasonably long time of a statement of account rendered by the other

party is a manifestation of assent.

(2) The account stated does not itself discharge any duty but is an admission by each party of the facts asserted and a promise by the debtor to pay according to its terms.

See restatement (second) of contracts § 282 (2012).

The comment to section 282 further elaborates:

*a. Computation not compromise or liquidation.* If a debtor and a creditor make an agreement in the nature of a compromise or a liquidation of a disputed or unliquidated debt, the agreement may be either a substituted contract or an accord resulting in discharge under the rules stated in §§ 279 and 280. *If however, they make an agreement in the nature of a computation rather than of compromise of the debt, the agreement is called an "account stated."* An account stated must be founded on previous transactions that have given rise to the relation of debtor and creditor and is usually based on a number of items. If each party is indebted to the other, then an account stated may be founded on the difference between their indebtedness.

*b. Manifestation of assent.* Even though the debtor may submit the statement in some instances; it is usually the creditor who submits the statement. In either case, the recipient's assent may be inferred from his conduct, Under the rule stated, in subsection (1), his retention of the statement for an unreasonably long time is a manifestation of his assent. How long a time is unreasonable is a question of fact to be answered in

light of all the circumstances. The parties, subject to rules such as that on unconscionability (§ 208), may fix by agreement a time after which the recipient will be considered to have assented to a statement of account. However, the party sending the statement cannot impose such a time limit on the recipient merely by a clause in the statement. For federal legislation on credit billing, see 15 U.S.C. § 1666 (1975).

*c. Effect of account stated.* An account stated does not itself result in discharge, but operates as an admission of its contents for evidentiary purposes. It also operates as a promise to pay. It may therefore becomes binding as a result of reliance under the rule stated in § 90. It may also be effective as a promise to pay an antecedent indebtedness under the rule stated in § 82, although statutes in many states require that it be in writing and signed if it is to have this effect. See comment a to § 82. If it is in writing it may also satisfy the statute of frauds. In the absence of a requirement of a writing, however, an account stated may be oral. The effect of an account stated as a promise is subject to the rules on mistake (chapter 6).

See restatement (second) of contracts § 282 (2012), comment (emphasis added).

A looming question which must be answered in order for us to proceed in our analysis is what constitutes a "computation"? Black's is silent on the term. Merriam-Wesbter's defines the term "computation" variously as "the act or action of computing: calculation"; "a system of reckoning"; or "an amount computed." See "Computation."

Merriam-Webster Online Dictionary, 2012. http://www.merriam-webster.com (20 Aug. 2012). As early as 1849, in *Mellon v. Campbell*, 11 Pa. 415,2 Am.Law. J. 222, our Supreme Court held that a pre-existing account or course of dealing between the parties is necessary to constitute an "account stated." The court there explained:

> Between merchants dealing together, and merchants having mutual accounts, if an account stated is furnished by one to the other, which is retained for a length of time without objection, it is good evidence in action of account stated. But when there has been no pre-existing debt or dealing between the parties, such a statement as was here furnished, could be no evidence against the defendant [....] To make an account stated, there must be a demand on the one side, which is acceded to on the other; *and it usually consists of an account of mutual transactions, drawn up by one party and exhibited to the other*.

See *Mellon v. Campbell*, 11 Pa. 415, 418, 2 Am. Law. J.222 (1849) (emphasis added).

The *Mellon* decision is important because it marginally answers the "computation" question; in order to support an action for "account stated," a "computation" of the "mutual transactions" between the parties should be "drawn up" and provided to the other party. We construe "computation" as entailing, at a minimum, the inclusion of constituent figures and mathematical functions applied thereto, which demonstrate how the balance achieved was calculated. See *Richburg v. Palisades Collection LLC*, 247 F.R.D. 457, 465 (E.D.Pa.2008) ("[a]n 'account stated'

traditionally arises when two parties, who engage in a series of transactions with one another, come together to balance the credits and debits and fix upon a total amount owed [....] This final tally, once assented to, becomes the 'account stated,' and any further cause of action is based on this 'account stated' rather than on any of the underlying transactions.") (internal citation omitted).

The Pennsylvania appellate cases cited by plaintiff do not suggest a contrary construction. See *David v. Veitcher Magnesitwerke Actien Gesellschaft*, supra, 348 Pa. at 338. 35 A.2d at 347 (itemizing retirement pension and severance pay with specific offsets for taxation in a termination letter expressly stating an account of employer's settled obligation, which arose pursuant to employment contract formed two years earlier); *Donahue v. City of Philadelphia*, 157 Pa. Super. 124, 128, 41 A.2d 879, 880 (1945) ("[a] ppellant's indebtedness to the city *and the items which composed it were* stated under 'remarks' in the pay roll, and they were stated accurately; and the city's indebtedness to appellant *and the basis upon which it rested* were stated, and stated accurately") (emphasis added); *Cauffiel v. Glenn*, 345 Pa. 181, 182-83, 27 A.2d 30, 31-32 (1942) ("[t]he account is stated in the form of debits and credits and starts with reference to a statement of May 20, 1925, showing the indebtedness of S.H. to Daniel at that time to amount to $36,500, consisting of personal notes $12,500, Glenn mortgage $4,000, and Coalmont notes guaranteed $20,000. A further loan of $9,000 was made on June 27, 1925, by Daniel to S.H. and interest was charged on all the obligations to July 7, 1925. These items are followed by credits as follows: An unimportant item of $70.30, July

7, [1925] mortgage on Maryland Farm $30,000, July 16 deed to property, 524 Grove Ave. $16,000.' At this point a balance was struck amounting to $176.54. July 7, 1925, is an important date for the reason that defendants claim that the mortgage on the Maryland farm for $30,000 constituted a payment inter alia of the Glenn mortgage [....] Assuming that the account constituted an account stated [...] the individual items would be presumed to be correct, in the absence of objections to particular items."); *Tribulas v. Continental Equitable Title & Trust Co.*, 331 Pa. 283, 287, 200 A. 659, 661 (1938) ("[t]he pass book [...] shows that it was balanced for the first time on February 15, 1922; on that date the bank had charged itself with the amounts deposited as they were entered at the time of deposit, together with five items of interest payable to the depositor, making a total of $19,203.67. The bank claimed credit on the other side of the account for depositor's withdrawals by checks in the sum of $17,698.64, leaving the bank indebted in the sum of $1,505.03, which was carried forward as a new balance. The book was balanced again May 28, 1923, when the plaintiffs balance was $637.22, credit having been taken for a withdrawal by her of $1,000; it was balanced a third time, January 7, 1924, when plaintiff's balance was $146.50, credit having been taken for the withdrawal of $500 by her check dated June 27, 1923. Thereafter credits appear by a deposit of $1,220 on February 21, 1926, and by entries of interest for each year until August 25, 1930. Then the balance carried forward in plaintiff's favor as of December 30, 1930, was $452.68 appearing on December 30, 1930, with interest to the date of closing the account.")

As plaintiff contends, however, in *Rush's Service Center, Inc. v. Genareo*, 10 Pa. D.& C.4th 445 (Pa.Cmn. Pls.1991) the court of common pleas of Lawrence County stated, "[t]he party relying upon the account stated need not individually set forth the items of which the account consist [....] That is to say that plaintiff is not required to itemize the account." See *id.* at 448 (internal citations omitted). However, one of the cases relied upon by *Rush's* was *Ryon v. Andershonis*, 42 Pa. D.&C.2d 86 (Pa.Cmn. Pls.1967), where the court of common pleas of Schuylkill County held the opposite in the context of an "account stated" lawsuit instituted by an insurance agent against an insured to whom he had allegedly delivered policies:

> The first count of the complaint has attached thereto Exhibit "A," which purports to be a copy of plaintiff's book of original entry [....] It contains 56 items covering a period of time from March 29, 1961, to January 23, 1965. Although the exhibit indicates upon its face that no balance was due as of August 28, 1962, it includes 27 items prior to that date. The body of the complaint admits credits in the lump sum of $1,765.29, but the exhibit contains no items specifically designated as credits. All items, whether they be debits or credits, are set forth in the same column headed by the word, "premium".

> *Defendant is entitled to a more informative statement of the account, with items not in issue eliminated, and debits and credits properly identified, itemized and segregated.* The objections on the first count are sustained.

See *id* at 87 (emphasis added).

We acknowledge that there is a lack of consensus among the courts of common pleas as to just what is required in order to proceed at the pleading stage upon an "account stated" cause of action. Reducing the present controversy to the facts here averred by plaintiff, the billing statement attached to plaintiff's complaint as "Exhibit A" in the case sub judice bears defendant's name and sets forth a previous balance of seven thousand, five hundred and ninety-four dollars and ninety-seven cents ($7,594.97) and also sets forth line items for "payments," "other credits," "purchases," and "cash advances," each respectively reading "#########0.00" next to each line item. Further, there were "fees charged" in the amount of thirty-nine dollars ($39.00) and "interest charged" in the amount of one hundred and ninety-five dollars and fifty-seven cents ($195.57). This results in a new balance, going forward, of seven thousand, eight hundred and twenty-nine dollars and fifty-four cents ($7,829,54). The thirty-nine dollar ($39.00) fee charged is further explained to be a late fee. No calculation of any "mutual transactions," i.e., the addition of debits for purchases or cash advances and subtraction of credits for payments, and the like, by which plaintiff arrived at the previous balance of seven thousand, five hundred and ninety-four dollars and ninety-seven cents ($7,594.97) has been provided. We accept as true, for the purpose of ruling on defendant's preliminary objections, plaintiff's averments and the attached "Exhibit A," regarding a history of dealing between plaintiff and defendant, noting, however, that this only begins the inquiry.

The formulations by Farnsworth and the restatement regarding a "computation" as a "sum" and Black's formulation of it as a "balance" lend a degree of credibility to plaintiffs position that itemization need not be included in a "computation" of an account stated where the parties mutually agree on the amount of a liquidated debt. However, even if we momentarily assume, arguendo, that the third lay definition of "computation" provided by Merriam-Webster's, which is reproduced above, applies in Pennsylvania, and, as the *Rush's Service Center* court held, no itemization of the underlying dealings or transactions were required to formulate a "computation" of a liquidated debt in support of an "account stated," the contemporaneous addition of interest and fees on "Exhibit A" and counsel's admission at oral argument that "Exhibit A" was not the last statement transmitted to defendant strongly suggests that the alleged account was not yet liquidated, but, rather, constituted an open, unliquidated, running book account for revolving credit. Black's defines "running account" as "[a]n open, unsettled account that exhibits the reciprocal demands between the parties" and "revolving credit" as "[a] consumer-credit arrangement that allows the borrower to buy goods or secure loans on a continuing basis as long as the outstanding balance does not exceed a specified limit. — Also termed open credit; revolving charge account." See Black's Law Dictionary (9th ed. 2009). Recognizing this, we adopt the position expressed by the Beaver County court of common pleas stated in *C-E Glass v. Ryan*, supra, 70 Pa. D.&C.2d 251, that "[p]roper pleading in an action upon an open book account [...] requires that the attached account be more

than an unintelligible list of figures, but must be clear and definite charges, *not lumped but itemized, showing the nature of the transactions*." See *id.* at 254 (emphasis added) (citing 1 P.L. Encyc., Accounts, § 2; *Molder v. Xillas*, 22 Beaver 74 (1960); *Petrie v. Patterson*, 24 Beaver 114 (1962); *Cove v. Ferguson*, 25 Beaver 16 (1963); *Gulf Oil Corp. v. Dooley*, 27 Beaver 20 (1965)).

We find E*imco-BSP Service Co. v. Valley Inland Pacific Constructors*, 626 F.2d 669 (9th Cir. 1980), a case decided by the ninth circuit court of appeals construing Oregon law, to be highly instructive, given the facts of the instant case. The federal court of appeals there stated:

An account stated is an agreement between persons having previous monetary transactions that fixes the amount due in respect to such transactions and promises payment [....] As such, an account stated is itself an independent contract that is enforceable without regard to the underlying transactions on which it is based [....] After a party has tendered an account, the promise to pay the stated amount may be expressed, or implied from the actions of the party when their conduct justifies the inference that they have agreed [...] Unless a debtor objects within a reasonable time to a tendered account, the inference of an agreement may be drawn and the account considered as stated [....] The theory of account stated has its usual application where persons who carry on business with each other have a series of transactions constituting an open running account with various items of debit and credit [....] *Parties with frequent transactions, such as merchant traders, banks and their depositors, retail stores and customers,*

*and business partners, will often reach a final mutual accounting and agreement on a balance due through an account stated [...] Thus, the device of account stated is clearly most suitable where the parties have had a series of credits and dibits in fixed amounts, and wish to settle their account. It is not surprising, therefore, that under Oregon law, an unliquidated claim could never serve as the basis for [such] an account [...] The policy behind such a rule was to prevent one party from using an account stated to convert an action for unliquidated damages into an action upon a money demand, thereby preventing inquiry into the original cause of action and requiring persons against whom such a claim is made to be on constant alert 'to prevent an undue advantage being taken of him.'*

See *id* at 671-72 (internal citations omitted) (emphasis added).

The language emphasized above from *Eimco-BSP* illustrates our concern in this case that Plaintiff is here attempting to unilaterally convert an unliquidated revolving account obligation into a fixed debt without having provided any notice to defendant prior to doing so or any consultation with defendant as to his assent even the Rush's court appears to have acknowledged that liquidation of the account is required prior to such an account being "stated" in the legal sense, explaining, "[t]he idea behind an action upon account stated is that a preceding contract *has been discharged and merged into* a stated account which is based upon the earlier contract." See *id.* at 447 (emphasis added) (citing *McKinney v. Earl L. Cump Inc.*, 2 Adams Leg. J 132 (1961)); see also *Richburg*

*v. Pallisades Collection LLC*, supra, 247 F.R.D. at 464-65 (quoting *Telebase Systems, Inc. v. Gateway Comm'ns, Inc.*, 1988 WL 21845 at 3 (E.D.Pa. March 2, 1988)) ("[t]he effect of an account stated is that 'the amount or balance so agreed upon constitutes a new and independent cause of action, superseding and merging the antecedent causes of action represented by the particular items. It is a liquidated debt, as binding as if evidenced by a note, bill or bond.'"); *Donahue*, supra, 157 Pa.Super. at 128-29, 41 A.2d 880-81 (noting that the predecessor restatement, of contracts, § 422, states the applicable rule [...] that "*[m]atured* debts are discharged by a manifestation of assent in good faith by debtor and creditor to a stated sum as an accurate computation of the amount of the matured debt or debts due the creditor [....]") (emphasis added).

Again, the Pennsylvania appellate case law cited to by plaintiff does not militate in the opposite direction. Plaintiff contends that "[a]lthough *David v. Veitscher Magnesitwerke Actien Gesellschaft*, 35 A.2d 346 (Pa.1944), does not directly address claims based on credit card accounts, it is applicable to the instant matter and does support plaintiff's claims." See plaintiffs brief in opposition to preliminary objections, sixth page. We find *David* clearly distinguishable from the present case. In *David*, plaintiff was a Romarian citizen who was employed as a director and general manager at Veitscher Magnesitwerke Actien Gesellschaft (VMAG), an Austrian chemical company. Plaintiff instituted a suit for the attachment and garnishment of corporate funds, in demand on an "account stated.", embodied in a termination letter, which was based on debts perfected by an earlier contract

for employment with VMAG, consisting of various letters and minutes of VMAG's executive committee, all of which were attached to plaintiff's pleadings. After Austria was "absorbed by the Third German Reich" On March 15, 1938, the Third Reich, under the guise of the "German Government of Austria" issued decrees via Hermann Goering, including one on foreign exchange control, which forbade the payment of funds outside the German Reich and to certain individuals cognized "foreigners" by the German policy, which included and impacted plaintiff. The court explained the underlying arrangement between VMAG and plaintiff as follows and further elaborated as to how VMAG expressly stated an account in favor of Dr. David in a fixed amount, relating to a prior ascertained debt:

Dr. David, a citizen of Rumania, was employed as a director of the VMAG and served as general manager at its main office in Vienna from about December 21, 1925, to May 1, 1938. In the letter and minutes his employment was extended from time to time, and on April 28, 1936, it was extended 'for an indefinite period so that it may be terminated at intervals of six months on the 30th day of June and the 31st day of December in each year, in which case Dr. David shall receive contractual dismissal pay in the sum of a year's salary, which in 1938 was 86,160 schillings. On October 4, 1937, the executive committee agreed that 'in the event that the service relationship with Dr. David shall be terminated by the company, he will receive a pension of 2000 schillings monthly, beginning with the month following the end of the service relationship.' On April

28, 1938, the service relationship with. Dr. David was terminated by the company as of December 31, 1938, but excusing him 'from further service from May 1, 1938, for the entire duration of the notice period, that is, up to December 31, 1938.' In the same letter they expressly stated an account, thereby creating a fixed debt, as follows:

There will be, therefore, the following payments made on April 30, 1938: 8 monthly salaries after the deduction of social insurance

S. 52,695.12

Christmas remuneration for 1938

50% of the contractual dismissal pay, which is established at 1 year's salary

S. 43,080.00

Gross sum

There will be deducted with a view to the computation of the yearly budget for 1938 and the tax computation in accordance with section 175 of the tax law as to dismissal pay:

Tax on salaries S. 10,120.28

Crisis and security

Taxes S. 8,844.81 S. 18,965.09

There will remain, therefore a payment of S. 83,437.72

of Reichsmarks 55,625.14

*the settlement of which we are ordering.*

In this account they also stated: 'You will be entitled to participate in social insurance until December 31, 1938. On January 2, 1939, the other half of the dismissal pay as well as the first monthly installment of your pension in the sum fixed by agreement will fall due.' They also said in this letter that 'All laws which will be newly introduced with regard to the dismissal pay and pension will have to be taken into consideration at the time of payment on January 2, 1939.' It is for 'the other half' of the one year's salary and for the monthly pension payment which they contracted for in 1936 and upon which the statement of account of 1938 is founded, this suit was brought.

See *David*, 348 Pa. at 338, 35 A.2d at 348 (1944) (emphasis added).

The *David* court held, in the face of the defense utilized by VMAG, that it was impossible for VMAG to comply with its former contractual liabilities in light of the Third Reich foreign exchange control policy, that:

The liability of VMAG to the plaintiff *became fixed* not by virtue of the writing of April 28, 1938, terminating the employment but by virtue of the agreements of April 28, 1936, and October 4, 1937. *There created a liquidated debt. This debt was sufficient consideration for the new cause of action created on April 28, 1938, when VMAG stated an account in writing of this liability to the plaintiff* and paid him all but the 'remaining 50%

of the contractual dismissal pay, which is established at one year's salary, and the monthly installment of his pension. The effect of this account stated is that a new duty arises to pay *a sum so fixed.*"

See *David*, 348 Pa. at 341,35 A.2d at 349 (emphasis added).

In response to the affidavit of defense raised by VMAG, the court, after a discussion of vested rights to a pension, reckoned:

[T]hese laws are impotent to affect the then existing obligation as to the balance of the sum *so fixed*, or to affect the promised pension. Later laws in the form of dictatorial decrees or otherwise could not affect rights and obligations *already matured* [....] What is the effect of the Goering decree upon the plaintiff's claim as pleaded? If we treat the plaintiff's claim as a cause of action *for the payment of a fixed sum on an account stated*, the decree is inapplicable. The decree is entitled a 'decree to exclude jews from the german economical life, of November 12, 1938'. Its effective date was January 1, 1939. We can find nothing in section 2 of this decree upon which the defendant relies *that affects a liquidated debt in an account stated.*

See *David*, 348 Pa. at 341-43, 35 A.2d at 349 (emphasis added).

To the extent plaintiff in the case sub judice envisions similarity between the facts as set forth in its complaint and those apparent on the face of *David*, such similarity is lost on us, as the amount plaintiff in *David* claimed to be

due was expressly liquidated and did not constitute part of an ongoing revolving set of transactions; it was, rather, founded upon a contract for employment, the rights set forth under which had already vested.

Taking all of plaintiffs well-pleaded facts and the inferences deducible therefrom as true and assuming that the billing statement constitutes prima facie evidence of prior dealings between plaintiff and defendant, it appears in the instant case that, even if plaintiff transmitted and defendant received the "Exhibit A" billing statement such receipt would constitute no more than an expected regular occurrence, within the scope of an ongoing revolving credit relationship.

Therefore, before we pose the question of how long of a period of retention is "unreasonable," we must examine the circumstances in order to ascertain whether the account was ever liquidated or finalized, thus triggering a reasonable expectation in defendant that he was no longer being asked to pay according to the alleged revolving credit relationship but was, instead, acquiescing to a final settlement of the alleged account. Plaintiffs complaint is barren of any averment or attached writings indicating that defendant was ever put on notice that plaintiff sought to finalize the alleged account, thereby converting it to a liquidated money demand *or* that plaintiff ever sought defendant's actual assent in the correctness of the sum stated on this single billing statement, which was chronologically positioned at some point within a regular ongoing stream of monthly billing statements. This much plaintiff has averred. See plaintiff's complaint at ¶7 ("defendant was provided with monthly statements for the

account including the billing statement attached hereto as Exhibit A [....]")

We shift now to the related question of whether defendant impliedly assented to the correctness of the account balance as embodied in the "Exhibit A" billing statement. Plaintiff contends that "defendant's assent to the account balance set forth in [the single monthly billing statement] is manifested through the prior conduct of defendant either making payment on the account or retaining the statement without payment, after receipt of the monthly billing statements." See plaintiffs complaint at ¶10. Plaintiff here advocates a catch-22 position; if defendant had made a payment in response to the "Exhibit A" billing statement, under plaintiff's formulation, defendant would have, by virtue of doing so, verified the correctness of the balance owed as set forth thereupon. On the other hand, according to plaintiffs allegations, defendant has failed to act and has, likewise, in plaintiff's view, verified the correctness of the balance owed by not objecting for nearly two years prior to plaintiff's filing of this lawsuit.

We outright reject plaintiff's contention that defendant's having made a payment on the alleged account, at some indefinite point of time in the past, could constitute defendant's assent to the correctness of the account balance as set forth in a more or jess lump sum[1] as of March 29, 2010, in "Exhibit A". We can perceive no circumstances under which a debtor's payment on a *revolving* credit line, at some undefined point in the past, could constitute the debtor's assent to the correctness of a "computation" which

---

1. With the exception of the addition of interest and a late fee.

had, at the time of such payment, not yet been computed. The nature of an open running account for revolving credit is that the balances change from period to period due to new charges and/or new payments. Plaintiff's suggestion both lacks specificity in that it fails to state *when* the payment alluded to was made, as is required by rules 1019(f) and 1028(a) and, worse, it smacks of temporal impossibility. Even if a specific date, upon which defendant allegedly made such payment were supplied by plaintiff, such information could do no more than support that there were pre-existing dealings between plaintiff and defendant. We already admit as true, for the purpose of ruling on defendant's preliminary objections, that plaintiff and defendant had some history of dealings pursuant to plaintiff's averments and in light of the attached "Exhibit A" billing statement, however plaintiff's once-upon-a-time payment averment is not a well-pleaded fact, from which we could reasonably infer that defendant had assented to the correctness of the balance reflected on "Exhibit A" in support of an "account stated" cause of action.

As stated in *David*, supra, where there is agreement between the parties as to the correctness of the account, a plaintiff need not elaborate upon the dimensions of the underlying agreement which resulted in the stated account. With regard to plaintiffs contention that defendant assented by failing to object to the "Exhibit A" billing statement, we assume, since plaintiff has not attached any express manifestation of defendant's assent, that plaintiff has not acted in derogation of the clear mandates of rule 1019(h) and (i) and, instead, that plaintiff relies solely upon the language found in the latter sentence of paragraph (1) of

section 282 of the restatement, as set forth above, and the concept's equivalent expressions in Pennsylvania law; that is, plaintiff relies on the *inference* of implied assent it draws from defendant's prolonged silence in response to its provision to defendant of the "Exhibit A" billing statement. Whether a failure to object to a credit card billing statement constitutes a debtor's implied assent to the correctness of the account is a circumstances-dependent inquiry. In *Leinbach v. Wolle,* a 1905 case, the trial court referred to an "account stated" as '"an account in writing examined and accepted by both parties[,]'" further elaborating that "'*this acceptance need not be express. but may be implied from circumstances.*'" See *Leinbach v. Wolle,* 211 Pa. 629, 61 A. 248 (1905) (affirming trial court's order) (emphasis added); see also *Lytle, Campbell & Co., Inc. v. Somers, Fitler & Todd Co.,* 276 Pa. 409, 418, 120 A. 409, 412 (1923)). However, the Supreme Court's affirmation in *Leinbach* is not dispositive as to whether or not defendant impliedly acquiesced in the case sub judice, since the circumstances in *Leinbach* differed substantially. In *Leinbach* a bill was brought for an account of business partnership transactions upon the apparent dissolution of the partnership:

> The account in question was prepared by an expert selected by all the parties in interest, and bears upon its face unmistakable evidence of care and skill. When completed, a copy of the account was handed to each of the parties. A meeting of the parties was then held at Mr. Leinbach's request, followed by others, at all of which the account was under investigation. After some changes had been made, the account in its present form

was finally accepted as correct at the last meeting by both Mr. Wolle and Mr. Kremerer, Mr. Leinbach claims that he did not expressly accept the account. In this he is flatly contradicted not only by Mr. Wolle and Mr. Kremerer, but by the expert. But let it be conceded that he did not expressly accept the account. He admits that he made no objection to it, and his silence *under the circumstances* must be construed as the equivalent of consent. Beyond doubt, therefore, the account in question is a stated account [....]

See *Leinbach*, 211 Pa. 629, 61 A. 248 (emphasis added); see also *Donahue v. City of Philadelphia*, supra.

In *Leinbach*, equally-sophisticated business partners sat down in the same room with an auditor and settled their accounts. When all was said and done, each business partner received a copy of the finalized accounts, as audited. One partner, who physically received a copy in person, did and said nothing to object to its correctness in the presence of the auditor who had been contracted by them to ascertain the state of the accounts, but then later filed a lawsuit. There, the court construed the plaintiff-partner's actions against him and foreclosed his lawsuit by implied assent. We presume that the court did so for a variety of reasons, including that the express purpose of the parties' convening was to settle their business accounts and that they had hired a professional to aid in that endeavor. Such facts are a far cry from those sub judice, where Plaintiff, a consumer credit lender, allegedly transmitted a billing statement, as it had every month for several months and then continued to transmit billing statements, only retroactively framing the "Exhibit A"

billing statement as an "account stated."

Adopting plaintiff's suggested formulation would force mail-receiving credit consumers to maintain an uncomfortably high level of aloofness regarding every invoice received within the paradigm of an ongoing credit relationship for fear that, assuming such invoice constitutes a legitimate expression of dealings between recipient and sender, any snapshot indicia of ongoing transactions might somehow mature, without their knowledge, and, by the mere passage of time, metamorphosize into their assent to its correctness as a debt enforceable absent any showing of the underlying negotiations, bargain, or transactions which culminated in the account. Such a rule is entirely unfair and ignorant of modern realities attendant to consumer credit relationships. We are mindful of the age-old statement by the Pennsylvania Supreme Court that "[a]ny contract or instrument by which it is intended to diminish legal rights; which normally accrue as a result of a given legal relationship or transaction must spell out the intention of the parties with the greatest of particularity, since such contracts or instruments are construed strictly against the party seeking their protection." See *Morton v. Borough of Ambridge*, 375 Pa. 630, 635, 101 A.2d 661, 663 (1954). Therefore, on this point, pursuant to the above discussion, we again adopt the view stated by the court of common pleas of Beaver County in *C-E Glass v. Ryan*, supra, 70 Pa.D.&C.2d 251, that "where the essential facts exist, an open running book account may be converted into an account stated. *However, something more than mere acquiescence by failure to take exception to a series of statements of account received in the mail is required.*"

See *id.*, 70 Pa.D.&C.2d at 253 (emphasis added). See also *Velocity investments, LLC v. Kahanic*, 2012 WL 1644358 (Pa.Cmn.Pls.2012) (quoting *Target National Bank v. Kilbride*, 2010 WL 1435304 (Pa. Cmn. Pls.2010) (Lackawanna court of common pleas held "[i]n a credit card action premised upon an "account stated' theory. 'the complaint must include allegations which would support a finding that the cardholder has agreed to, or acquiesced in the correctness of the account submitted to him [...] and 'something more than mere acquiescence by failure to take exception to a series of statements of account received in the mail is required.'") (internal citations omitted).

In order to proceed on an "account stated" cause of action in a credit card case, we believe that plaintiff must, at a minimum, aver that plaintiff notified defendant that it wished to settle, close out, or liquidate the alleged account or that it sought and obtained defendant's actual express assent as to the correctness of the sum set forth on he billing statement reflected in "Exhibit A" as a final liquidated balance in order to comply with rule 1019(a). If such facts are manifest in a writing, the writing must be declared pursuant to rule 1019(h) and the same must be attached to the complaint or, if not available to plaintiff, its substance must be set forth by averment along with an explanation as to why it is not available, pursuant to rule 1019(i). If such facts simply do not exist, then it appears plaintiff has attempted to pull a "bait and switch" regarding the nature of the account it alleges existed between itself and defendant at the time the "Exhibit A" billing statement was mailed and its "account stated" cause of action is dead in the water. Presently, absent these averments, plaintiff's

complaint is insufficiently specific, pursuant to Rule 1028(a)(3).

Compounding the extreme discomfort we feel in this area is a marked one-sidedness regarding the sophistication, bargaining power, and vast control over the terms exercised by a creditor in adhesive consumer credit card relationships. Unlike *David*, where VMAG expressly reduced its intention to pay to plaintiff, a sophisticated upper level manager, certain liquidated sums, plaintiff here controlled the drafting and transmission of the billing statement, upon which it relies. We agree, to a limited extent, with the reasoning of the court of common pleas of Centre County in *Capital One Bank (USA) v. Clevenstine*, 7 Pa. D.&C. 5th 153 (Pa.Cmn.Pls.2009), where that court stated:

Plaintiff appears to be relying on defendant's silence to prove acquiescence to an account stated. This is not a permissible use of the account stated. An account stated is more appropriately plead in a situation in which two equal, sophisticated parties have an ongoing business relationship. An account stated theory is not appropriate in a credit card account case [....] An account stated theory may have been appropriate when credit card issuers gave cardholders fixed interest rates and charged very few fees. With the proliferation of credit cards over the past two decades, however, interest rates have varied and fees have increased in number and severity. It is unreasonable to expect the average debtor to understand the changing terms of a customer agreement such that he or she can object to any invoice received in a timely manner. For many the first and

only time they will consider what is in the "fine print" is when they fall behind on payments [...]

See id, 7 Pa. D.&C. 5th at 157-58.

Comment b. to restatement section 282 recognizes that the party sending the statement cannot impose a time limitation on the recipient merely by the unilateral imposition of a clause contained in a billing statement. See restatement (second) of contracts, § 282, comment b. While the same comment permits the parties to mutually agree to a period of retention without objection, after which implied assent could be triggered, credit card companies would be required to fundamentally after the way they do business and cede a degree of bargaining power back to credit consumers in order for them to ever make use of such a provision.

We do not go as far as the *Clevenstine* court, which appears to have held that an "account stated" cause of action is always inappropriate in consumer credit card transactions. However, where, as here, plaintiff has failed to aver that plaintiff notified defendant that it wished to close out or liquidate the revolving credit account or to obtain defendant's actual assent as to the correctness of a balance set forth on a particular date, we refuse to permit an "account stated" cause of action to proceed beyond the pleading stage, This court, in separate opinions by Williamson, P.J., in *Unifund v. Furl*, Clinton County CV# 1558-2011 and Miller, J., in *Cavalry v. Confer*, Clinton County CV# 1418-2011, has held that credit card debt collectors, like all other plaintiffs in civil cases, must plead facts with a requisite degree of specificity and, where the basis of the

claim pursued is a writing, must also attach such writing in support of whatever cause of action plaintiff seeks to pursue in order to comport with rules 1019 and 1028 of the Pennsylvania rules of civil procedure and this court's broad discretion to require specificity as enunciated by the Superior Court in *Pike County Hotels Corp. v. Kiefer*, 262 Pa.Super. 126, 396 A.2d 677 (1978). To permit what plaintiff proposes would be to nullify in toto the effect of these opinions, and the purpose of the aforementioned rules of civil procedure, which hold a plaintiff to a minimal standard of fact pleading and specificity therein. It would do so by allowing relationships, which are truly controlled by contract, to be stripped to their bare bones, and pleaded as "accounts stated," based on an alleged debtor's fictional assent. Plaintiff has proffered and this court can discern no justifiable reason to permit plaintiff to utilize "account stated" as a Trojan Horse to avoid such standards of pleading.

Plaintiff shall have thirty (30) days leave to amend its complaint in order to supplement its factual averments and to supply any writing upon which any cause of action it chooses to assert rests. In the absence of facts supporting the inference that defendant was notified of plaintiff's intent to finalize or liquidate the alleged account or to obtain defendant's actual assent in the correctness thereof, we doubt that proceeding under an alternative theory, such as breach of contract, would prejudice or even inconvenience plaintiff, since plaintiff has averred that it maintained "[a]ccurate records of all debits and credits to the account [....]"

An order consistent with this opinion shall be entered

this date.

## ORDER

And now, August 23, 2012, for the reasons set forth above, defendant's preliminary objections are sustained. Plaintiff shall have thirty (30) days leave to amend and file a more specific amended complaint by doing the following:

1. If plaintiff wishes to proceed upon an "account stated" cause of action, plaintiff is directed to:

a. Set forth averments of fact that plaintiff notified defendant that plaintiff was attempting to liquidate the alleged open, running, revolving credit account between plaintiff and defendant, attaching any writings supporting the same, pursuant to rule 1019(i); and set forth averments of fact revealing the constituent figures and mathematical formulae utilized to arrive at the sum sated on the "Exhibit A" billing statement, attaching any writings from which the same derive; or

b. Set forth averments of fact indicating that plaintiff sought and obtained defendant's express assent to the correctness of the balance set forth upon plaintiff's "Exhibit A" billing statement, attaching any writings supporting the same, pursuant to rule 1019(i);

2. Alternatively, plaintiff may set forth averments of fact sufficient to support a cause of action other than "account stated."